UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
DURHAM DIVISION

In Re: )
)
Garrett Thomas Parker and ) Case No. 08-81819C-13D
Tammy Lynne Parker, )
)
Debtors. )
)

## MEMORANDUM OPINION

This case came before the court on March 12, 2009, for a hearing on the confirmation of the Debtors' proposed plan of reorganization and for a hearing on the Chapter 13 Trustee's objection to confirmation. Edward C. Boltz appeared on behalf of the Debtors and Benjamin E. Lovell appeared on behalf of Richard M. Hutson, II, the Chapter 13 Standing Trustee ("Trustee"). For the reasons that follow, the court will overrule the objection and confirm the Debtors' Chapter 13 plan.

## FACTS

The facts are not in dispute. The Debtors filed their Chapter 13 petition on November 26, 2008. As part of their petition, the Debtors filed a statement of income (Schedule I), a statement of expenses (Schedule J), and a statement of current monthly income ("CMI") on Form B22C. Form B22C shows the Debtors as having $6,404.53 in CMI.[1] The Debtors' annualized CMI of $76,854.36 is

---

[1] CMI is generally defined in section 101(10A) as "the average monthly income from all sources that the debtor receives ... without regard to whether such income is taxable income, derived

Case 08-81819    Doc 25    Filed 04/28/09    Page 1 of 7

less than the median family income of $81,341.00 for a household of six in North Carolina. The Debtors' Chapter 13 plan (the "Plan") proposes to pay nothing to their unsecured creditors, who are owed $33,867.86.

The Debtors' Schedule I shows gross income of $6,404.53, which consists of the Male Debtor's gross salary of $4,514.53, the Male Debtor's VA disability payment of $398.00, the Male Debtor's gross army retirement payment of $792.00, and child support payments made to the Female Debtor in the amount of $700.00. Schedule I also shows deductions of $1,004.70 for taxes and social security and $72.68 for insurance. The Debtors' Schedule J shows total monthly expenses of $5,327.15, including monthly payments totaling $909.48 for two automobiles, as well as a monthly payment of $340.40 on a Harley Davidson motorcycle (the "Motorcycle"). The Trustee objected to confirmation of the Plan because: (1) the Debtors do not devote all of their projected disposable income to the Plan as required by 11 U.S.C. § 1325(b); and (2) the Plan was not proposed in good faith as required by 11 U.S.C. § 1325(a)(3).

DISCUSSION

The Trustee's first basis for objection is that the Debtors are not devoting all of their projected disposable income to the

---

during the 6-month period ending on the last day of the calendar month immediately preceding the date of the commencement of the case ... and includes any amount paid by any entity other than the debtor ... on a regular basis for the household expenses of the debtor or the debtor's dependants . . . ."

-2-

Plan as required pursuant to section 1125(b) of the United States Bankruptcy Code. The Trustee contends that because the Motorcycle is not a reasonably necessary expense it should be released, and the Debtors' funds that were being devoted to payment of the Motorcycle should be directed instead to unsecured creditors.

Under the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"), if the Trustee or an unsecured creditor objects and a debtor is not paying unsecured creditors in full, the plan must provide for all projected disposable income received in the applicable commitment period to be applied to payments to unsecured creditors in order for the plan to be confirmed. 11 U.S.C. § 1325(b)(1); In re Rush, 387 B.R. 26, 29 (Bankr. W.D. Mo. 2008).[2] Disposable income is defined in section 1325(b)(2) as CMI, excluding income from child support payments to the extent reasonably necessary to be expended for such child (and other categories not relevant here), less amounts reasonably necessary to be expended for the maintenance or support of the debtor or the debtor's dependents.[3] Although section 1325(b)(3) specifies what

---

[2] Section 1325(b)(1) provides: "If the trustee . . . objects to confirmation of the plan, then the court may not approve the plan unless . . . the plan provides that all of the debtor's projected disposable income . . . will be applied to make payments to unsecured creditors under the plan."

[3] Section 1325(b)(2) provides: "the term 'disposable income' means current monthly income received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to be expended

-3-

constitutes "amounts reasonably necessary to be expended" for above median income debtors, there is no such provision applicable to below median income debtors. <u>In re Girodes</u>, 350 B.R. 31, 37 (Bankr. M.D.N.C. 2006). Instead, reasonably necessary expenses for below median income debtors are computed from the expenses in Schedule J. <u>Id.</u> When a debtor has a below median income, the court may review the expenses set forth in Schedule J to determine whether the expenses are reasonably necessary. <u>See</u> <u>id.</u> Additionally, calculation of disposable income requires a deduction for the debtor's payroll expenses shown on Schedule I. <u>In re Linn</u>, 2008 WL 687448, at *2 (Bankr. N.D. W. Va. Mar. 10, 2008).[4] Disposable income for below median income debtors is therefore calculated by taking CMI as calculated on Form B22C and subtracting: (A) sources of income such as child support that are excluded by section 1325(b)(2); (B) a debtor's reasonably necessary expenses on Schedule J; and (C) payroll deductions on Schedule I.

Here, the Debtors have CMI of $6,404.53. $700.00 of this amount consists of child support payments that must be excluded from CMI pursuant to section 1325(b)(2).[5] The Debtors' Schedule J

---

for the maintenance or support of the debtor or a dependent of the debtor . . . ."

[4] Schedule J makes no provision for taxes. <u>Rush</u>, 387 B.R. at 32. This is because taxes (and other payroll deductions such as insurance) are assumed to have been deducted from gross income on Schedule I in order to arrive at net income. <u>Id.</u>

[5] As previously noted, section 1325(b)(2) requires that the child support payments be "reasonably necessary to be expended for

-4-

expenses excluding the Motorcycle payment are $4,986.75, and their Schedule I payroll deductions total $1,077.38. The result is that even if the court accepts the Trustee's contention that the Motorcycle is not reasonably necessary for the maintenance or support of the Debtors, the Debtors still have a negative of $359.60 in disposable income. Thus, regardless of whether or not the Debtors keep the Motorcycle, they have no disposable income.

Having determined that the Debtors have no disposable income under section 1325(b)(2), the remaining question is whether the Debtors have any projected disposable income for the purposes of section 1325(b)(1)(B). The court finds that the Debtors do not. Projected disposable income is calculated by multiplying disposable income by the appropriate plan length. <u>Musselman v. eCast Settlement Corp. (In re Musselman)</u>, 394 B.R. 801, 807 (E.D.N.C. 2008). The result is that because the Debtors have no disposable income, they have no projected disposable income. <u>In re Alexander</u>, 344 B.R. 742, 750 (Bankr. E.D.N.C. 2006) ("debtors with no disposable income under [BAPCPA] have no projected disposable income."); <u>Rush</u>, 397 B.R. at 32 (below median income debtors with no disposable income have no projected disposable income). Because

---

such child." N.C. Gen. Stat. § 50-13.4(c) provides that "[p]ayments ordered for the support of a minor child shall be in such amount as to meet the reasonable needs of the child . . . ." The court has assumed that the child support payment in this case was determined in accordance with section 50-13.4 and that the full amount of the payment is reasonably necessary for the support of the child or children for whom the payment is made. There has been no contention to the contrary.

Case 08-81819    Doc 25    Filed 04/28/09    Page 5 of 7

the Debtors have no projected disposable income to pay to unsecured creditors under the Plan, the Trustee's first objection must be overruled.

The Trustee's second basis for objection is based on good faith. The Trustee contends that because the Debtors will retain and pay for the Motorcycle while providing no dividend to unsecured creditors, the Plan was not proposed in good faith pursuant to section 1325(a)(3).[6] This court has previously held that for an above median income debtor, the issue of whether the debtor is committing sufficient income to the plan should be determined under section 1325(b) rather than as an element of good faith under section 1325(a)(3). In re Barr, 341 B.R. 181, 186 (Bankr. M.D.N.C. 2006). The court now extends the same rule to cases involving below median income debtors as well. Accordingly, the Trustee's second objection is also overruled

In accordance with Rule 9021 of the Federal Rules of Bankruptcy Procedure, a separate order shall be entered confirming the Plan.

This 28th day of April, 2009.

_____
WILLIAM L. STOCKS
United States Bankruptcy Judge

---

[6] Section 1325(a) provides: ". . . the court shall confirm a plan if . . . (3) the plan has been proposed in good faith and not by any means forbidden by law . . . ."

Case 08-81819    Doc 25    Filed 04/28/09    Page 6 of 7

PARTIES IN INTEREST

Garrett Thomas Parker
Tammy Lynne Parker
117 West Twelve Oaks Road
Raeford, NC 28376

Edward C. Boltz, Esq.
6616-203 Six Forks Road
Raleigh, NC 27615

Richard M. Hutson, II, Trustee